IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORETTO HOSPITAL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-cv-3762 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| FEDERAL INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER[1]**

Plaintiff Loretto Hospital ("Loretto" or "the Hospital") brings this action against its insurer Federal Insurance Company ("Federal") for breach of contract, declaratory relief, and violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155. Loretto's claims arise from Federal's purported improper failure and refusal to pay for over $2.5 million in defense expenses related to criminal federal and state investigations into Loretto's officers and employees under the directors, officers, and entity ("D&O") coverage in the insurance policy that Loretto purchased from Federal. (Dckt. #1 ¶7).

Federal moves to dismiss the complaint, (Dckt. #19), pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing, *inter alia*, that (1) it paid the maximum liability for all regulatory claims under the D&O coverage provided in the insurance policy; (2) the clauses of the insurance policy relied upon by Loretto do not trigger further coverage; (3) even if further coverage were triggered by those clauses of the policy, it is otherwise excluded; and (4) Loretto has failed to state a claim under Section 155. As explained below, the Court finds that Loretto

---

[1] On January 15, 2025, the Court issued an order, (Dckt. #53), advising the parties that it did not intend to issue this Opinion under seal unless a party presented good cause for doing so in a motion filed by January 24, 2025. Neither party filed a motion to seal by that date and, as such, the Court issues this Opinion publicly.

has failed to plead a plausible claim that Federal breached its duty under the insurance policy to pay for the remaining defense expenses at issue. Accordingly, the Court dismisses Loretto's breach of contract claim along with its derivative declaratory judgment and Section 155 claims.

I.  **LEGAL STANDARD UNDER RULE 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

When resolving a motion under Rule 12(b)(6), "in addition to the allegations set forth in the complaint itself," the Court may consider, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Indeed, it is "well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (same, citing cases).

II.  **FACTUAL BACKGROUND**

The Court draws the facts set forth below from: (1) the facts pleaded in the complaint; (2) the documents attached to the complaint as exhibits (including Loretto's insurance policy and

communications between federal and state authorities and Loretto); and (3) documents attached to Federal's motion that are central to Loretto's claims and were expressly referenced in the complaint by date and content but not attached as exhibits thereto. The latter category of documents includes various news articles and letters exchanged between Loretto and Federal regarding the claims at issue. (*See* Dckt. #19-2 (listing the documents attached to Federal's motion to dismiss and identifying where each document is referenced in the complaint)).

A.  The Parties

Loretto Hospital is a small, not-for-profit hospital located on Chicago's west side that serves predominantly low-income patients. (Dckt. #1 ¶6). Federal is a Chubb-group insurance company incorporated in Indiana, with its principal place of business in New Jersey. (*Id*. ¶2). This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) and 28 U.S.C. §2201.

B.  The Investigation

In December 2020, Loretto began distributing Chicago's first COVID-19 vaccine doses to healthcare and frontline workers, after public health officials chose Loretto as a vaccine distribution site. (Dckt. #1 ¶10). However, in mid-March 2021, local media organizations began reporting that certain Loretto employees, including Loretto's then-CEO, CFO, and Chief Transformation Officer, held off-site COVID-19 vaccination events at unapproved locations, including a hotel, a high-end jewelry store, and a Gold Coast restaurant. (*Id*. ¶11; *see also* Dckt. #19-3). At these events, Loretto's then-officers and agents allegedly vaccinated dozens of individuals, including many who were not yet eligible for vaccination under the Chicago Department of Public Health guidelines. (Dckt. #1 ¶11).

According to Loretto, the media reports surrounding the vaccines resulted in "increased scrutiny to the Hospital, its operations, and its leadership." (*Id*. ¶12). For example, in April

3

2021, Block Club published an article accusing "cash-strapped Loretto Hospital" of paying millions to companies formed by the recently-resigned CFO/COO's business partner and close friend. (*Id*.; Dckt. #19-4).

On May 12, 2021, the U.S. Department of Justice ("DOJ") issued a subpoena *duces tecum* bearing a grand jury number (the "May 12 Subpoena"). (*Id*. ¶13; Dckt. #1-1). The cover letter accompanying the May 12 Subpoena explained that the DOJ "seeks records pursuant to an official criminal investigation" and requested Loretto produce documents regarding, *inter alia*, Loretto's COVID-19 vaccine distribution program and certain alleged agreements between Loretto and specified third parties. (Dckt. #1 ¶13; Dckt. #1-1 at 6).

On May 20, 2021, the Illinois Attorney General issued a Request for Information and/or Materials (the "AG Demand"). (Dckt. #1 ¶14; Dckt. #19-4). In it, the AG referenced and attached the recent news stories about Loretto, and demanded that Loretto produce documents regarding, *inter alia*, the Hospital's operations, its vaccine program, and its dealings with any for-profit businesses of any interested persons, including current or former officers, directors, and key employees, their family members, or business partners. (Dckt. #19-4).

From May 2021 through the filing of this action in June 2023, the DOJ issued seventeen additional subpoenas bearing the same grand jury number as the May 12 Subpoena (collectively, with the May 12 Subpoena, the "DOJ Subpoenas"). (Dckt. #1 ¶15). Those subsequent subpoenas sought the production of documents related to, *inter alia*, Loretto's contracts and auditing; vendors; certain current or former officers, employees, and affiliates; intended or actual business ventures involving current or former officers, employees, and affiliates; and Loretto's COVID-19 response. (Dckt. #1 ¶15; Dckt. #1-3).

On December 13, 2021, the DOJ sent correspondence to Loretto identifying seven of its current or former officers and employees as "targets" or "subjects" of the grand jury investigation and requesting to interview those individuals (the "DOJ Demand"). (Dckt. #1 ¶34; Dckt. #1-5). The United States Attorney's Office Criminal Resource Manual ("USAOM") defines a "target" of an investigation as "a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant . . . ." (Dckt. #1 ¶35, *quoting* USAOM 9-11.151). The USAOM defines a "subject" of an investigation as "a person whose conduct is within the scope of the grand jury's investigation." (Dckt. #1 ¶36, *quoting* USAOM 9-11.151).

Loretto agreed to indemnify six of the seven individuals named in the DOJ Demand for their legal costs incurred in responding to the same (the "Indemnified Insureds"). (Dckt. #1 ¶37). Loretto has "incurred substantial attorneys' fees and disbursements responding to the underlying investigations." (*Id*. ¶16). Specifically, as of the filing of this action in June 2023, Loretto had incurred more than $3.5 million in defense costs on behalf of itself and the Indemnified Insureds in responding to the DOJ Subpoenas, AG Demand, and DOJ Demand. (*Id*. ¶46).

**C. The Policy**

In consideration of premiums paid, Federal sold Loretto a "Health Care Portfolio Policy" (the "Policy") for the period of November 1, 2020 to November 1, 2021. (Dckt. #1-4). The Policy's D&O coverage is located within the Executive Liability, Entity Liability, and Employment Practices Coverage Section (the "D&O Section"). (Dckt. #1 ¶18). The D&O Section includes "Executive Indemnification Coverage Insuring Clause 2" and "Entity Coverage

5

Insuring Clause 3."[2] The Clause 2 and Clause 3 coverages each offer $5 million in limits, subject to a $75,000 per claim retention and a $5 million aggregate limit. (Dckt. #1 ¶18; *see also* Dckt. #19-1 at 7 ("The Policy's D&O Section has a $5,000,000 Maximum Aggregate Limit of Liability for all Claims, subject to certain retentions.")).

Insuring Clause 2 provides, in relevant part:

> The Company shall pay, on behalf of the **Organization**,[3] **Loss** for which the **Organization** grants indemnification to an **Insured Person**, as permitted or required by law, and which the **Insured Person** becomes legally obligated to pay on account of any **D&O Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** . . . for a **D&O Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **D&O Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 18 of this coverage section.

(Dckt. #1 ¶19; Dckt. #1-4 at 26).

Insuring Clause 3 provides, in relevant part:

> [T]he Company shall pay, on behalf of the **Organization**, **Loss** which the **Organization** becomes legally obligated to pay on account of any **Organization Claim** first made against the **Organization** during the **Policy Period** . . . for a **D&O Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Organization** or the **Insured Persons** before or during the **Policy Period**, but only if such **Organization Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 18 of this coverage section.

(Dckt. #1 ¶20, Dckt. #1-4 at 26).

The D&O Section of the Policy also includes, by endorsement, Regulatory Claim Coverage Insuring Clause 6 (the "Regulatory Claim Endorsement"). (Dckt. #1-4 at 67-70). The Regulatory Claim Endorsement provides, in relevant part:

---

[2] Loretto refers to these two insurance clauses as Side B coverage and Side C coverage, respectively, but the Court will refer to them—as does Federal—as they are titled in the Policy itself. (*See* Dckt. #1-4 at 26).

[3] Bolded terms are those that are defined in the Policy.

6

>The Company shall pay, on behalf of the **Insureds, Defense Costs** which the **Insureds** become legally obligated to pay on account of any **Regulatory Claim** first made against such **Insureds** during the Policy Period or . . . for a **Regulatory Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insureds** before or during the **Policy Period**, . . .

* * *

The Regulatory Claim Endorsement defines "**Regulatory Claim**" to include:

>(a) a written demand for monetary damages or non-monetary relief;

>(b) a search warrant, subpoena, notice of investigation, or contact letter including but not limited to any notice or letter received from a Recovery Audit Contractor (RAC);

* * *

>brought by or on behalf of a federal, state or local governmental, regulatory or administrative agency or entity against an **Insured** for a **Regulatory Wrongful Act**, including any appeal therefrom.

* * *

The Regulatory Claim Endorsement defines **Regulatory Wrongful Act** to include:

>. . . any actual or alleged violation by an **Insured** of the responsibilities, obligations or duties imposed by the Federal False Claims Act or any similar federal, state, or local statutory law or common law anywhere in the world, any federal, state, or local anti-kickback, self-referral or healthcare fraud and abuse law anywhere in the world, or amendments to or regulations promulgated under any such law; provided that **Regulatory Wrongful Act** shall not include any **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.

* * *

>*The Company's maximum aggregate liability for all **Defense Costs** on account of all **Regulatory Claims** shall be $1,000,000, which amount is part of and not in addition to the Company's maximum aggregate Limit of Liability for all **Defense Costs** on account of all Claims first made during the **Policy Period** . . .*

(Dckt. #1-4 at 67-70) (emphasis added).

7

D. **Loretto's Notice of the Claim and Federal's Denials**

Loretto promptly notified Federal of its claim under the Policy for the legal costs associated with responding to the initial May 12 Subpoena and the AG Demand. (Dckt. #1 ¶31). On July 12, 2021, Federal issued correspondence to Loretto acknowledging receipt of Loretto's claim, and stating further, in relevant part, as follows:

> Although our investigation is ongoing, based on the information received to date, we write to advise you that [Federal] will advance **Defense Costs** to the **Insured** Under Insuring Clause 6, **Regulatory Claims**.
>
> * * *
>
> The [May 12 Subpoena] and [AG Demand] are **Related Claims** and shall be treated as a single **Claim** first made on the date of the earliest of the **Related Claims**.[4]
>
> * * *
>
> [T]he maximum aggregate liability for all **Defense Costs** on account of all **Regulatory Claims** is $1 million subject to a $1 million retention and 50% co-insurance . . . **Defense Costs** are part of and not in addition to the limit of liability. In no event will [Federal] be liable for **Defense Costs** or the amount of any judgment or settlement in excess of the applicable limit or within the applicable retention.
>
> * * *
>
> Based on the presently available information, there has been no **D&O Claim**, Organization Claim or Employment Claim made against an **Insured Person** or the Organization for a **D&O Wrongful Act** or an **Employment Practices Wrongful Act**, thus coverage is not triggered under Insuring Clauses 1, 2, 3 or 4 at this time. However, the Grand Jury Subpoena expressly states that it is issued pursuant to an "official criminal investigation" and the [AG Demand] which advises of its investigation into alleged wrongdoing constitutes a **Regulatory Claim** against the

---

[4] Throughout its communications with Loretto, Federal took the position that the May 12 Subpoena, AG Notice, subsequent DOJ Subpoenas, and DOJ Demand were all issued as part of the same investigation and thus are **Related Claims** and amount to a single **Regulatory Claim** under the Policy. Loretto did not appear to ever dispute this position in its correspondence, nor in the instant complaint before the Court. (*See* Dckt. #1 ¶31) ("Loretto promptly notified Federal of its *Claim* under the Policy for the legal costs associated with responding to the *DOJ Subpoenas and AG Demand*.") (emphasis added).

8

>  **Organization** for a **Regulatory Wrongful Act**, thus implicating **Defense Costs** coverage for the **Organization** under Insuring Clause 6 . . .

(Dckt. #1 ¶¶32-33; Dckt. #19-5 at 2-3).[5] In other words, under a reservation of rights, Federal agreed that coverage was triggered under the Regulatory Claim Endorsement but—from the outset—denied that coverage was otherwise triggered under any other insurance clause, including Insuring Clauses 2 and 3.

On January 23, 2022, Loretto responded to Federal's July 12, 2021 letter. (Dckt. #1 ¶¶38-39; Dckt. #19-6). Among other things, Loretto advised Federal that it had since received two additional DOJ subpoenas and requested that Federal "reconsider coverage for [its] Claim under Insuring Clauses 2 and 3" for various reasons outlined in the letter. (Dckt. #19-6 at 3-4).

Following months of engagement between the parties, Federal responded by letter dated June 16, 2022. (Dckt. #1 ¶¶40-41; Dckt. #19-7). In that letter, Federal confirmed notice of the additional DOJ subpoenas as well as the DOJ Demand regarding various targets and subjects of the investigation. (Dckt. #19-7 at 3-4). But Federal once again explained that "coverage is only available for the DOJ Investigation . . . under Insuring Clause 6 of the [D&O Section] and the **Regulatory Claim** aggregate sublimit of $1 million, $1 million retention each **Regulatory Claim**, and 50% Coinsurance Percentage apply." (*Id*. at 5). Federal noted further that Loretto had not disputed in its January 23, 2022 letter "that the DOJ Subpoenas and AG [Demand] are a **Regulatory Claim**." (*Id*. at 7). In light of the sublimit for Loretto's **Regulatory Claim**, Federal continued to deny that coverage was available under Insuring Clauses 2 or 3, and—even if it was—Federal disagreed that Loretto's claim fell within those clauses. (*Id.* at 7-8).

Loretto responded to Federal on November 15, 2022, noting that Federal's letter:

---

[5] Again, Loretto did not attach its claim-related correspondence with Federal to the complaint itself, but it referenced each letter by date and content in its complaint. Accordingly, the Court may consider the letters themselves, which defendant attached to its motion. *See Williamson*, 714 F.3d at 436.

9

> [R]e-affirmed [Federal's] commitment to providing the Regulatory Claim coverage for this Claim and correctly recognized that the DOJ has made a **Regulatory Claim** against each of the Individual Insureds.

(Dckt. #1 ¶¶42; Dckt. #19-8 at 2). Loretto affirmed further that:

> [Federal's letter] correctly notes that the **Regulatory Claim** Coverage has an aggregate sublimit of $1 million, a $1 million retention for each Regulatory Claim, and is subject to a 50% Coinsurance Percentage.

(Dckt. #19-8 at 3). As a result, Loretto took issue with the fact that Federal had not yet begun paying Loretto's costs under the Regulatory Claim Endorsement based on the undisputed retention and co-insurance requirements therein. (*Id*.).

Loretto went on to argue that Federal's denial of coverage under Insuring Clauses 2 and 3 was unreasonable, unsupportable, and incorrect. (*Id*. at 4-6). With respect to the Regulatory Claim Endorsement's maximum aggregate sublimit precluding coverage under Insuring Clauses 2 and 3, Loretto argued as follows:

> There is **nothing** in the Regulatory Claim Coverage (Defense Costs Only) Endorsement that deletes or supersedes the Policy's base [D&O Section]. Despite this, [Federal's] position is effectively that the Endorsement – rather than being a guaranteed extension of coverage – is a backdoor exclusion that bars any coverage for subpoenas in the base [D&O Section]. [Federal's] argument is simply not supported by the Policy language and conflicts with Illinois' long-standing rule of policy interpretation that any provision being used to exclude or limit coverage "will be read narrowly and will be applied only where its terms are clear, definite, and specific." *Gillen v. State Farm Mut. Auto Ins. Co.*, 215 Ill. 2d 381, 393 (2005).

(*Id*. at 4) (emphasis in original).

In late 2022 and early 2023, the parties engaged in a private mediation, after which, on January 19, 2023, Federal paid the $1 million maximum aggregate limit of liability for Regulatory Claims under the Regulatory Claim Endorsement. (Dckt. #1 ¶43; Dckt. #19-9 at 3). As such, in a letter dated February 24, 2023, Federal advised Loretto that because it had "paid the $1 million **Regulatory Claim** sublimit, it has no further obligation under the Policy to

10

indemnify **Defense Costs** incurred in relation to the Investigations." (Dckt. #1 ¶¶43-44; Dckt. #19-9 at 3). Federal also continued to argue that Loretto's claim did not trigger coverage under Insuring Clauses 2 or 3 and, even if it did, raised for the first time that the "Regulatory Exclusion" otherwise precludes coverage. (*Id*. at 5).

Loretto filed this action on June 14, 2023, alleging breach of contract for Federal's denial of coverage under Insuring Clauses 2 and 3 for the additional unreimbursed defense expenses incurred in connection with the DOJ Subpoenas, DOJ Demand, and AG Demand (Count I); seeking a declaratory judgment regarding the parties' rights with respect to Insuring Clauses 2 and 3 and the Regulatory Exclusion (Count II); and alleging that Federal acted vexatiously and unreasonably in denying coverage in violation of 215 ILCS 5/155 (Count III).

### III.    ANALYSIS

#### A.    Loretto has failed to state a plausible claim for breach of the Policy.

As the parties seem to agree, Loretto's claim for breach of its insurance policy is governed by Illinois law. To state a claim for breach of contract under Illinois law, a plaintiff must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Furthermore, the Illinois Supreme Court "has long established that the burden is on the insured to prove that its claim falls within the coverage of an insurance policy." *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009). "Once the insured has demonstrated coverage, the burden then shifts to the insurer to prove that a limitation or exclusion applies." *Id*. Insureds, in turn, have the burden to prove that an exception to an exclusion or limitation restores coverage. *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010) (cleaned up).

11

The rules regarding how the Court must construe Policy are likewise clear. Illinois law "treats the interpretation of an insurance policy and the respective rights and obligations of the insurer and the insured as questions of law that the court may resolve summarily." *Roman Catholic Diocese of Springfield v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998) (citing cases). "An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Windridge of Naperville Condo. Ass'n v. Philadelphia Indemnity Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019), *quoting Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). "The court's function is 'to ascertain and give effect to the intention of the parties, as expressed in the policy language.'" *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 308 (7th Cir. 2021), *quoting Thounsavath v. State Farm Mut. Auto. Ins. Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018). "To ascertain the meaning of the policy's language, the Court 'must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.'" *VZA, LLC v. Cincinnati Ins. Co.*, 564 F. Supp. 3d 645, 650 (S.D.Ill. 2021), *quoting Windridge*, 932 F.3d at 1039. "If the policy is unambiguous, its terms must be applied as written." *Crescent Plaza*, 20 F.4th at 308.

Here, the parties agree that Loretto's claim for the defense costs it incurred in responding to the DOJ Subpoenas, AG Demand, and DOJ Demand amounts to a Regulatory Claim under the Policy. As outlined above, Federal has taken this position since its initial receipt of Loretto's claim, and Loretto itself acknowledged in its November 15, 2022 correspondence that Federal "correctly recognized that the DOJ has made a Regulatory Claim against each of the Individual Insureds." (Dckt. #1 ¶¶42; Dckt. #19-8 at 2). It is also undisputed—as confirmed by Loretto in that same November 15, 2022 correspondence—that the "Regulatory Claim Coverage has an

12

aggregate sublimit of $1 million, a $1 million retention for each Regulatory Claim, and is subject to a 50% Coinsurance Percentage." (Dckt. #19-8 at 3). Indeed, the Regulatory Claim Endorsement, by its unambiguous terms, confirms that the $1 million sublimit applies to *all* Defense Costs on account of *all* Regulatory Claims and is "part of and not in addition to the Company's maximum aggregate Limit of Liability for all defense costs on account of all claims." (Dckt. #1-4 at 70 (emphasis added)).

Thus, the parties agree—and the complaint and the documents incorporated therein establish—that Loretto's claim is a Regulatory Claim subject to a $1 million maximum aggregate sublimit, and, further, that Federal has paid Loretto the entirety of that $1 million sublimit. In its motion, Federal argues that its liability for the Regulatory Claim is capped by the $1 million sublimit and that Loretto's claim to recover the remaining costs associated with the Regulatory Claim should therefore be dismissed. (*See* Dckt. #19-1 at 13-15). The Court agrees.

As the Seventh Circuit and other courts have held, an insured like Loretto cannot recover amounts above a sublimit providing a "maximum" limit for a type of claim by asserting that the claim triggers multiple other insuring clauses. *See, e.g., Froedtert Health, Inc. v. Factory Mut. Ins. Co.*, 69 F.4th 466, 468-69, 472-73 (7th Cir. 2023) (holding that insured who sustained an $85 million loss for COVID-related costs was limited to recovering the maximum $1 million sublimit for loses from communicable disease response notwithstanding the policy's overall $2 billion all risks policy limit); *Philadelphia Indem. Ins. Co. v. Baby Fold, Inc.*, No. 16 C 10161, 2018 WL 4616353, at *7-9 (N.D.Ill. Sept. 26, 2018), *aff'd sub nom. Philadelphia Indem. Ins. Co. v. Chicago Tr. Co.*, 930 F.3d 910 (7th Cir. 2019) (applying the $250,000 sublimit endorsement rather than the $5 million per occurrence outlined in the declarations for the excess policy);

13

*Cerf v. Cont'l Cas. Co.*, No. CV 17-7993 DSF (SSX), 2018 WL 11348943, at *1–3 (C.D.Cal. Mar. 12, 2018) ("To the degree that the DOI Action constitutes a 'Claim,' there is no question that it is a claim by a 'governmental or quasi-governmental official or agency, including but not limited to any state or federal securities or insurance commission or agency, in any capacity.' Therefore, coverage is limited to [the] $25,000 [sublimit] in Loss for all such Claims.").

As the Seventh Circuit has explained, the result in these cases

is straightforward from the word 'sublimit,' which must refer to a limit within a limit. If that's not enough, the sublimit is 'within, and not excess of, nor in addition to' the policy's general limit. What else could this mean?

*Philadelphia Indem. Ins.*, 930 F.3d at 913; *First Centrum Corp. v. Landmark Am. Ins. Co.*, 237 Fed.Appx. 799, 801 (4th Cir. 2007) ("As is typical of sub-limits, the Ordinance or Law sub-limit did not increase the primary insurance limit."). Allowing a claim that is within the meaning of a sublimit to remain governed by the overall policy limit "would render the sublimit (along with every other sublimit and exclusion) ineffective, which is contrary to Illinois law." *Philadelphia Indem. Ins.*, 930 F.3d at 913. Indeed, the "very concept of a sublimit is to cap a carrier's exposure at an amount below the policy limit if a particular type of covered peril caused the loss." *Philadelphia Indem. Ins.*, 2018 WL 4616353, at *8 (cleaned up).

In its response to the motion to dismiss, Loretto does not address any of the sublimit-related case law cited by Federal or cite any other relevant caselaw on this issue. Instead, Loretto addresses Federal's sublimit argument as follows:

Federal's Motion additionally raises an endorsement in the Policy labeled 'Regulatory Claim Coverage (Defense Cost Only) Endorsement,' that provides a separate grant of coverage for $1 million (this coverage was triggered at the same time as the Policy's D&O Coverage and also erodes the Policy's $5 million aggregate limits). . . . The Regulatory Coverage was not raised in the Complaint and is not at issue in this case.

(Dckt. #25 at 10). Loretto's argument is both contrary to precedent and factually inaccurate.

14

To begin, under Loretto's argument, a Regulatory Claim arising under and paid pursuant to the sublimit would simply "erode the Policy's $5 million aggregate limit" and leave $4 million of coverage available to pay for any additional unreimbursed costs pertaining to the Regulatory Claim. This interpretation of the Policy would render the sublimit clause a nullity that is devoid of any meaning or practical effect. As such, Loretto's proposed interpretation is contrary to both the Seventh Circuit's holding in *Philadelphia Indem. Ins.*, 930 F.3d at 913, which makes it clear that a sublimit "refer[s] to a limit within a limit," and the rules of contract interpretation, which require the Court to "interpret the policy as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013) (cleaned up); *Society Insurance v. Cermak Produce No. 11, Inc.*, 684 F.Supp.3d 739, 745 (N.D.Ill. 2023) (noting that each provision of an insurance policy "must be read as intending to serve a purpose.") (citing *Wherle*).

Furthermore, Loretto's contention that the Regulatory Claim Endorsement "was not raised in the Complaint" and "is not at issue in this case" is wrong. The Regulatory Claim Endorsement has served as Federal's defense to additional coverage over the $1 million limit from the outset,[6] and the complaint makes explicit reference to Federal's February 24, 2023 letter to Loretto advising it "that the 'Regulatory Coverage' limits were exhausted and 'there is no further coverage available under the Policy for the Investigations.'" (Dckt. #1 ¶44). Federal's February 24 letter, which the Court can consider on the motion to dismiss because it is expressly referenced in the complaint and is central to the resolution of Loretto's claims, *see Kuebler*, 13

---

[6] The Court notes that the Regulatory Claim Endorsement is part of the Policy, and that Loretto attached the entire Policy to its Complaint as an exhibit. (Dckt. #1-4).

15

F.4th at 636, clearly explains Federal's position that the $1 million sublimit bars Loretto's claim for the additional unreimbursed costs pertaining to the Regulatory Claim. (Dckt. #19-7 at 5-7).

For all these reasons, the Court finds that the unambiguous language of the Policy imposes no further obligation on Federal to pay for the additional unreimbursed costs incurred in connection with the Regulatory Claim in light of the sublimit embodied within the Regulatory Claim Endorsement. As such, Loretto has failed to plead a plausible claim for breach of the contract under Count I.[7]

### B. Loretto's remaining claims fall with its breach of contract claim.

In light of the Court's finding that Loretto failed to state a plausible claim for breach of the Policy in Count I, Loretto's remaining claims for declaratory judgment in Count II (seeking essentially the same relief as in Count I) and for breach of Section 155 in Count III also fall short and are hereby dismissed. *See Lansing v. Carroll*, 868 F.Supp.2d 753, 763-64 (N.D.Ill. 2012) ("Because the declaratory judgment claim (Count I) fails to add anything not already raised in the breach of contract claim (Count II), in an exercise of its discretion the court dismisses Count I."); *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002) (noting that "Illinois courts allow a cause of action to proceed under Section 155 only if the insurer owed the insured benefits under the terms of the policy."); *VZA, LLC*, 564 F.Supp.3d at 650 (dismissing Section 155 claim after determining that the policy did not afford coverage).

---

[7] In light of this finding, the Court need not address the parties' remaining disputes regarding Insuring Clauses 1 or 2 or the Regulatory Claim Exclusion.

16

## CONCLUSION

For all the reasons stated above, Federal's motion to dismiss, (Dckt. #19), is granted.

**DATE:** **February 21, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**